Floyd W. Bell and Madeline W. Bell v. Commissioner. Earl W. Hosler and Dorothy E. Hosler v. Commissioner.
Bell v. Commissioner
Docket Nos. 40587, 40588.
United States Tax Court
T.C. Memo 1956-191; 1956 Tax Ct. Memo LEXIS 101; 15 T.C.M. (CCH) 1004; T.C.M. (RIA) 56191; August 24, 1956
*101 Buckeye Stamping Company distributed common stock as dividends to its holders of common stock in 1916 and 1922, capitalizing $180,000 in earnings and profits accumulated after February 28, 1913. In 1943 petitioners as members of a purchasing group, in effect, borrowed money from Buckeye in order to purchase its stock from the original holders and gave their notes in return. In 1945 the notes were cancelled upon surrender of 75 per cent of the stock by petitioners and other members of the purchasing group or their successors. Held, that cancellation of the notes was essentially equivalent to the distribution of a taxable dividend within the meaning of section 115(g) of the Internal Revenue Code of 1939. Woodworth v. Commissioner. 218 Fed. (2d) 719 (C.A. 6, 1955) followed. Roger K. Powell, Esq., and George H. Chamblin, Esq., for the petitioners. John C. Calhoun, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined deficiencies in petitioners' income tax for the calendar year 1945 in the following amounts: Docket
Petitioners
Deficiency
40587
Floyd W. and Madeline W.
Bell
$49,184.00
40588
Earl W. and Dorothy E.
Hosler
8,085.38
*102 The issue is whether petitioners realized a taxable dividend in 1945 under section 115(g) of the Internal Revenue Code of 1939 as the result of a transaction in which they surrendered to a corporation certain shares of its stock and received in exchange therefor the corporation's cancellation of certain notes owing by them to it. Petitioners filed their income tax returns for the calendar year 1945 with the collector of internal revenue at Columbus, Ohio. Findings of Fact Some of the facts are stipulated. They are so found and are incorporated herein by this reference. The Buckeye Stamping Company, hereinafter referred to as Buckeye, is an Ohio corporation which was organized prior to 1913. Its capital structure at the time of organization consisted of 200 shares of common stock with a par value of $100 per share. All the stock was issued at par. On May 9, 1916, Buckeye split its outstanding 200 shares of common stock, five for one, and issued 800 additional shares. Thereafter it had 1,000 shares outstanding. On December 19, 1922, it split its outstanding 1,000 shares, two for one, issued 1,000 additional shares and thereafter had 2,000 shares outstanding. At those times *103 Buckeye transferred $80,000 and $100,000, respectively, from its earned surplus account to its capital account. Prior to September 1943, Earle C. and Lillie G. Derby together held 90 per cent of Buckeye's outstanding stock. The other 10 per cent of Buckeye's outstanding stock was owned by five different persons. On May 21, 1943, Earle C. Derby died and his widow, Lillie G. Derby, was appointed executrix of his estate. On September 4, 1943, Lillie G. Derby, individually and as executrix of her late husband's estate, executed a written agreement with the members of a purchasing syndicate, which included petitioners, for the sale of her 1,800 shares of Buckeye stock at $170 per share. The agreement recited a down payment of $5,000 and provided that delivery of the shares would be made to the syndicate members or their nominees on or before October 15, 1943, upon payment to Lillie G. Derby of the balance of the $306,000 purchase price. The agreement further provided that prior to the consummation of the sale, Lillie G. Derby and her attorney would resign as directors of Buckeye, and that meanwhile the assets of Buckeye would not be depleted by the declaration of dividends or otherwise *104 than in the normal operations of the business. Under the agreement, Lillie G. Derby undertook to persuade the owners of the remaining 200 shares to sell them to the syndicate at the same price $170of per share. On September 11, 1943, the minority stockholders sold their shares to the syndicate for $170 per share, payment being made by cashier's check. On September 13, 1943, Lillie G. Derby and her attorney resigned as directors of Buckeye. On September 17, 1943, a new board of directors was elected, which consisted principally of syndicate members. Thereafter, on the same day, the board approved the sale of certain securities of an approximate value of $193,000 which were on the same day delivered to The Huntington National Bank which issued a cashier's check to Buckeye for $175,000 and three days later issued a second check to Buckeye for $13,551.33 representing the balance due from the sale of the securities. The check for $175,000 was endorsed by Buckeye and delivered to Lillie G. Derby. On the same day, a draft for $76,000 and a cashier's check for $50,000 representing the balance of the purchase price, were delivered to Lillie G. Derby. Part of these funds used in effecting *105 the change in ownership of the Buckeye stock were acquired through loans made to Buckeye by Bell Sound System, Inc., and by The Northern Savings Bank, in the amounts of $75,000 and $20,000, respectively. After Lillie G. Derby was paid for her 1,800 shares of Buckeye stock, the certificates for the stock were surrendered to Buckeye and cancelled. On September 17, 1943, the parties listed below executed and delivered to Buckeye their personal notes in the following amounts: Floyd W. and Madeline W. Bell
$136,000
George B. and Rayma M. Fraser
34,000
Earl W. and Dorothy E. Hosler
29,750
A. C. and Lura Bell Jahn
34,000
J. R. and Olive N. Perkins
34,000
Tom L. and Mary P. Wheeler
4,250
Floyd and Anna I. Woodworth
68,000
$8$340Total,000 Subsequently, in November or December 1943, Buckeye issued certificates in the names of the following persons for the indicated number of shares of its stock, but never delivered them: Stockholder
Shares
Madeline W. Bell
800
A. I. Woodworth
400
Rayma M. Fraser
200
A. C. and L. B. Jahn
200
Olive N. Perkins
200
Dorothy E. Hosler
175
Mary P. Wheeler
25
Total
2,000 The stock certificates were held *106 by Buckeye as security for the payment of the above-mentioned notes. The makers of the notes reduced their obligations at various times from September 1943 to the end of 1945 as follows: Original $8Payments
Payments
Note
Dec. 1943
Mayme Fraser
$ 34,000
$ 3,740.00
Anna I. Woodworth
34,000
3,740.00
Anna I. Woodworth
34,000
3,740.00
J. R. Perkins *
34,000
3,740.00
Mollie L. Chorpening *
A. C. and Lora Bell Jahn
34,000
3,740.00
Mary P. Wheeler
4,250$8467.20
383.62
Dorothy B. Hosler
29,750$83,272.50
2,685.38
M. M. Bell
136,000
14,960.00
$340,000
$37,400.00
Payments
Dec. 1944
Dec. 1945
Total
Mayme Fraser
$ 3,069.00
$ 1,600.00
$ 8,409.00
Anna I. Woodworth
3,069.00
1,600.00
8,409.00
Anna I. Woodworth
3,069.00$81,600.00
8,409.00
J. R. Perkins *
$83,740.00
Mollie L. Chorpening *
3,069.00
1,600.00
4,669.00
A. C. and Lora Bell Jahn
3,069.00
1,600.00
8,409.00
Mary P. Wheeler
200.00
1,051.12
Dorothy B. Hosler
1,400.00
7,357.88
M. M. Bell
12,276.00
6,400.00
33,636.00
$30,690.00
$16,000.00
$84,090.00
In the latter part of 1945 *107 Buckeye's legal counsel advised the company that in his opinion the issuance of stock for notes constituted an illegal act. Acting on this advice, the persons in whose names stock certificates had been issued on December 31, 1945, surrendered 75 per cent of the number of shares standing in their respective names and received credit on their notes at the rate of $170 per share. Such credit was given by cancellation of note obligations held by the company, plus or minus certain small cash adjustments. The amount of notes cancelled and the stock of Buckeye outstanding on December 31, 1945, were as follows: Credit on
$8Total
notes by sale
Shares
of stock
Held
Mayme Fraser
$ 25,500.00
50
Anna I. Woodworth
25,500.00
50
Anna I. Woodworth
25,500.00
50
Mollie L. Chorpening
25,500.00
50
A. C. and Lora Bell Jahn
25,500.00
50
Dorothy B. Hosler
22,312.50
43 3/4
Mary P. Wheeler
3,187.50
6 1/4
M. M. Bell
102,000.00
200
Total
$255,000.00
500
An analysis of the accumulated surplus of Buckeye is as follows: Earnings Source
Nontaxable
Taxable
Total
As of January 1, 1913:
$147,644.82
$ 0.00
$147,644.82
Profits for January and February 1913
2,032.45
0.00
2,032.45
based on proration of total earnings for
1913
Profits from March 1, 1913 to December
0.00
10,162.27
10,162.27
31, 1913, based on proration of total
earnings for 1913
TOTAL
$147,677.27
$ 10,162.27
$159,839.54
Less: Dividend paid 4/24/13 prorated over
$ 1,804.15
$ 5,970.00
period 1/1/13 to 4/24/13 $8$ 4,165.85
Less: Dividend paid 12/29/13
0.00
5,970.00
5,970.00
Surplus as of Jan. 1, 1914
$145,511.42
$ 2,388.12
$147,899.54
Accumulated earnings after taxes from
1/1/14 to 12/31/45 including $180,000.00
of nontaxable stock
dividends
0.00
167,515.28
167,515.28
Surplus as of Dec. 31, 1945 before 1945
$145,511.42
$169,903.40
$315,414.82
dividends
*108 Respondent determined that the $255,000 in notes cancelled by Buckeye on December 31, 1945, was a taxable dividend to the extent of the surplus of $169,903.40. Of the $95,000 borrowed by Buckeye in September 1943, and used by the petitioners' syndicate to purchase the stock of such company held by Lillie G. Derby, all but $15,000 had been repaid at the end of 1944, and no part of the liability existed at the time of the stock redemption on December 31, 1945. Petitioners, as members of a syndicate or purchasing group, joined together to buy, and did buy in 1943, all of the oustanding common stock of Buckeye from its former stockholders. The transaction in which petitioners surrendered 75 per cent of their stock to Buckeye in exchange for Buckeye's cancellation of notes owed by them to it was essentially equivalent to the distribution of a taxable dividend. Opinion In Woodworth v. Commissioner, 218 Fed. (2d) 719 (C.A. 6, 1955) which involved other stockholders who took part in the same transaction before us here, it was held, affirming a memorandum opinion of this Court, that the stock8olders realized a dividend when notes given by them for the purchase of Buckeye *109 stock were cancelled and the shares held as security for the notes were surrendered. We think the Woodworth case governs this one. Decisions will be entered for the respondent. Footnotes
*. Perkins' interest acquired by Chorpening.↩